E-FILED
Thursday, 08 April, 2010  04:15:52 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JASON L. NIEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3304 |
| | ) | |
| NATIONWIDE MUTUAL | ) | |
| INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants' Motion to Dismiss, In Part, Plaintiff's Complaint (Defendants' Motion) (d/e 9) and Memorandum in Support of Defendants' Motion to Dismiss, In Part, Plaintiff's Complaint (d/e 10).  Plaintiff has filed Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss (d/e 12), Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss (d/e 13), Plaintiff's Request for Oral Arguments as to Defendants' Motion to Dismiss Plaintiff's Complaint, In Part (Plaintiff's Motion) (d/e 15), and an Index of Documents Submitted in Support of Plaintiff's Motion in Opposition to

Defendant's [sic] Motion to Dismiss, In Part, and In Support of Plaintiff's Request for Reconsideration as to the Court's Ruling as to Discovery Stay Pending Motion to Dismiss, In Part, and In Support of Plaintiff's Request for Oral Arguments as to the Defendants' Motion to Dismiss, In Part (Index) (d/e 17). Defendants filed Defendants' Opposition and Objections to Plaintiff's Index of Documents (Objections) (d/e 19), and Plaintiff filed Plaintiff's Reply to Defendants' Opposition and Objections to Plaintiff's Index of Documents (d/e 20).[1]

This matter is fully briefed and ripe for adjudication. For the reasons described below, Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is denied. Defendants' Objections to the Index are sustained.

<u>FACTS</u>

On November 4, 2009, Plaintiff filed suit against Defendants Nationwide Mutual Insurance Company (Nationwide) and Allied Mutual Insurance Company (Allied), as well as M. Diane Koken, Fred C. Finney,

---

[1]Plaintiff had also requested reconsideration of U.S. Magistrate Judge Byron G. Cudmore's ruling that discovery in this case would not commence until after this Court ruled on Defendants' Motion. <u>See</u> <u>Text Order of January 8, 2010</u>; <u>Plaintiff's Request for Reconsideration as to the Court's Ruling Placing a Stay on Discovery Pending Ruling on the Pending Motion to Dismiss, In Part (d/e 16)</u>. Judge Cudmore denied this request on January 22, 2010. <u>Text Order of January 22, 2010</u>.

Barry J. Nalebuff, William G. "Jerry" Jurgensen, Stephen Rasmussen, Kirt
Walker, Eric E. Smith, Timothy Cotter, Natalie Cadwallader, Jocelyn Curry,
Vicki Schneider, David Sitz, Joseph Garber, Judy Reynolds, John Raybuck,
and Raymond Flowers (collectively Individual Defendants) in the Circuit
Court of Sangamon County, Illinois, as case number 2009 L 296.  See
Notice of Removal (d/e 1), Ex. A, Complaint.  The ten-count Complaint
alleges violations of various provisions of federal and state law, including
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title
VII); the Civil Rights Act of 1866, as amended by the Civil Rights Act of
1991, 42 U.S.C. § 1981 (§ 1981); the Civil Rights Act of 1877, 42 U.S.C.
§ 1983 (§ 1983); the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116
Stat. 745 (2002) (SOX); the Illinois Human Rights Act, 775 ILCS 5/1-101
et seq.; the Illinois Whistleblower Reward and Protection Act, 740 ILCS
175/1 et seq. (Whistleblower Act); the Indiana Civil Rights Law, Ind. Code
§§ 22-9-1-1 et seq.; and Michigan's Elliott-Larsen Civil Rights Act, Mich.
Comp. Laws Ann. §§ 37.2101 et seq..  He also presents claims for libel,
slander, retaliatory discharge, intentional or negligent interference with
contractual relations, breach of express or implied employment contract, as
well as violations of "additional common and/or constitutional law

protections against retaliation and/or discrimination which exist in these [states]." Complaint, ¶ 2.

According to the Complaint, Defendant Nationwide, an Ohio corporation, hired Plaintiff as a commercial claims consultant in one of its Ohio offices in 2004. Nationwide promoted Plaintiff on September 21, 2005, to associate commercial claims director for Nationwide's Great Lakes Region. Plaintiff moved from Ohio to Carmel, Indiana, to assume this position, which involved supervising employees in and traveling to Indiana, Illinois, and Michigan. On January 10, 2006, Nationwide again promoted Plaintiff to field director of commercial claims.

Plaintiff had heard of alleged financial reserve reporting improprieties at Nationwide's affiliate, Defendant Allied, prior to being hired by Nationwide in 2004. Specifically, Plaintiff claims that managers at Allied "artificially" suppressed claims reserves so that they were eligible for more lucrative bonuses. Complaint, ¶ 31. Plaintiff claims that Nationwide and Allied began merging their claims operations in Fall 2005. Shortly after Plaintiff started at Nationwide, he queried his supervisor about financial reporting manipulation with regard to Allied's reserves. Plaintiff alleges that his supervisor told him that "financial manipulation was indeed occurring"

4

at Allied.  <u>Complaint</u>, ¶ 34.  Plaintiff told his supervisor that he would not participate in financial reserves manipulation.

During the course of his employment, Plaintiff claims that he discovered evidence of reserves manipulation, which he reported to his supervisor.  No action was taken, and Plaintiff states that he was not selected for a promotion to commercial claims director of the Des Moines regional office in April 2005 because of his complaints.  However, in September 2005, Plaintiff applied for and received the position of associate commercial claims director for the Great Lakes Region, after being interviewed by hiring manager Defendant Barrett, Defendant Schmidt, and human resources manager Defendant Barnett.

As associate commercial claims director, Plaintiff and his team were responsible for administrating claims for both Nationwide and Allied in the central United States.  After working in this position for approximately one year, Plaintiff again applied for the position of claims director in the Des Moines office.  Nationwide did not give Plaintiff the position because Plaintiff admittedly failed to follow internal job-posting procedures in connection with one of his subordinate employees.  Nonetheless, Plaintiff claims that the real reason he was not selected was his earlier and continued

complaints about Allied's financial reserves practices.

In 2007, Plaintiff alleges that higher-ups in the Nationwide management structure began expressing concern about a lack of racial and gender diversity in the company. Part of Plaintiff's and other management personnel's semi-annual and annual review scores were based on their ability to achieve racial and gender diversity in their teams. Plaintiff claims that he and his team performed exceptionally well in this regard. In September 2007, Plaintiff's manager and claims officer of the Great Lakes Region, Defendant Barrett, was replaced by Defendant Jocelyn Curry, a woman "of Chinese descent." Complaint, ¶ 46. Plaintiff claims that more qualified candidates were passed over for this position because they were white males.

Plaintiff and Curry did not get along. Plaintiff alleges that Curry was inexperienced, unknowledgeable, and did not value the input or cooperation of the more experienced members of her team. Plaintiff claims that "Curry did not interact well with leaders of the male gender in many instances, particularly where those individuals were subordinate." Complaint, ¶ 48. Curry and Plaintiff also butted heads over Allied's alleged financial reserves manipulation, although both were employees of Nationwide. Plaintiff alleges that Curry and management personnel from Allied met and agreed

to artificially repress claims reserves.

In November 2007, Plaintiff recommended a candidate for a claims manager position on his team.  Only two candidates had applied for the position, which was posted internally.  One of the candidates, a Hispanic male, was an hour late for his interview, and had little education, experience and training in the field.  The other candidate, a white male, was on time, had supervisory experience, and had a better resume than the other candidate in general.  Plaintiff recommended the white male candidate, but Curry quashed his recommendation.  Plaintiff suspects this was because the candidate he recommended was not diverse.

Plaintiff applied for an assistant vice president of claims position in one of Nationwide's Texas offices in December 2007.  Curry refused to support him in his application, and one of Plaintiff's mentors within the Nationwide organization told Plaintiff that the person who would be selected for the position "would be diverse."  Complaint ¶ 54.  Nonetheless, Plaintiff applied for the position and was interviewed by Defendants Raybuck and Reynolds.  Plaintiff's interview in Dallas, Texas, lasted only forty-five minutes.  Plaintiff was not selected for the position, and later learned that the pool of candidates that had advanced to the final interview

round was entirely diverse, and that a black male was ultimately selected to fill the position.[2]

Shortly after this incident, Plaintiff complained to Defendant Cadwallader, the human resources director of the Great Lakes Region, that Nationwide's diversity initiatives were getting in the way of hiring qualified candidates. Several days after this meeting, Plaintiff had his annual review with Curry, who informed him that she had received complaints about him being too strict and having too high of expectations from his employees. Their relationship continued to deteriorate throughout the early part of 2008, when Curry was allegedly complicit in more of Allied's financial reserves manipulation.

On February 22, 2008, Plaintiff filed in internal complaint regarding Allied's financial reserves practices with the assistant vice president of human resources and with the Nationwide Office of Ethics. This complaint included an inquiry about Nationwide's Talent Import Program, which apparently was designed to seek out and advance diverse employees within

---

[2]Plaintiff offers additional allegations of instances where Nationwide did not select white males for promotion or hiring, despite their superior qualifications, and instead hired sub-standard diverse candidates. These allegations do not impact the disposition of Defendants' Motion, and therefore the Court omits them from its discussion.

the Nationwide corporate structure.  In July 2008, Nationwide responded to Plaintiff's concerns and told him that nothing untoward was transpiring with respect to the financial reserves issue or the Talent Import Program.

By August 2008, though, Plaintiff's relationship with Curry had reached a new low.  Plaintiff alleges that Curry became increasingly more abusive toward him after she discovered that he had filed an ethics complaint against her.  Curry insisted that Cadwallader be present in all meetings between Plaintiff and Curry, for the latter's "protection." Complaint, ¶ 62.  On August 14, 2008, Curry and Plaintiff met for his mid-year review.  For the first time in his twenty-year career, Plaintiff received a "Does Not Meet" (DNM) expectations rating from one of his supervisors. Plaintiff alleges that giving an employee the DNM rating without prior warning, or absent subjecting the employee to coaching and discipline, was contrary to Nationwide's standard practices.  Plaintiff claims that this evaluation was objectively unreasonable and inconsistent with Plaintiff's accomplishments in light of previously established performance targets. Plaintiff was told that if he did not "get into [Curry's] graces quickly [,] he would be fired."  Complaint, ¶ 65.

In late September 2008, Plaintiff's team participated in a reserves

9

reconciliation accounting process with Defendant Flowers.   While the minimum accuracy goal for reserves was eighty-five percent, Plaintiff's team only achieved fifty-one percent.  Plaintiff's requests to review the results and rebut the findings were denied.  Plaintiff later learned that Flowers had allegedly skewed the results of the audit.  Later that day Plaintiff met with Curry and Cadwallader, who told him that he was "in the wrong job," and asked him whether he would accept a position as a claims representative, a multi-level demotion.  Complaint, ¶ 68.  These Defendants told Plaintiff that they would not support his search for a lateral internal position.

Plaintiff then applied for a position as an excess and surplus claims manager with Scottsdale Insurance Company, a subsidiary of Nationwide.  After an initial interview, though, the hiring team decided to hire a candidate in the Arizona region to avoid relocation costs.  Plaintiff alleges that Curry gave the hiring team a negative recommendation, and that the team ceased being interested in him after Curry poisoned the well.

On September 27, 2008, Plaintiff filed another complaint with the Office of Ethics, which referred the matter to Defendant Schneider in Nationwide's Office of Associate Relations.  Plaintiff also conducted an independent audit of the negative reconciliation review, using his free time

on the weekends.  He determined that the reconciliation team's review was inaccurate, and forwarded his findings to Curry, the team, and executive leadership.  He received no response.

Curry placed Plaintiff on a coaching plan in mid October 2008, part of which involved Plaintiff meeting with Curry and Cadwallader on a weekly basis.  Curry continued to criticize Plaintiff's performance, and allegedly told Plaintiff that she expected different things from him than she expected from other directors.  During this time, Plaintiff continued receiving information about financial reserves manipulation at Allied, this time from a former Allied executive who alleged that Stephen Rasmussen, Nationwide's president at the time, knew about the problems.  Eventually, Curry placed Plaintiff on a forty-five day formal performance improvement program, which Plaintiff believed would be a precursor to his termination.

In November 2008, Defendant Schneider completed her investigation of Plaintiff's complaints and determined that they were without merit. Plaintiff was reprimanded in writing for insubordination, allegedly because of his ethics complaints.  Plaintiff believes that this was in violation of Nationwide's "no retaliation" policy.  Plaintiff sent a letter to Defendants Jurgensen, who was Nationwide's chief executive officer at the time, and

Rasmussen on December 6, 2008, laying out his complaints about Allied's reserves reporting and about the allegedly discriminatory hiring practices he had witnessed and experienced.

Also in December 2008, Plaintiff filed written complaints with the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), and the Indiana Department of Insurance. He alleged that Nationwide and Allied were violating federal securities laws, and that Nationwide's Talent Import Program violated federal employment law. On January 25, 2009, Plaintiff met with an EEOC investigator in Indianapolis, Indiana, and filed a formal charge against Nationwide.

Plaintiff continued to believe that Curry and Cadwallader were mistreating him, and later that month filed another complaint with the EEOC. Plaintiff claims that all of these things put him under a great deal of stress, and that he had to be placed on medication to treat high blood pressure because of his employer's actions against him. Plaintiff's relationship with Curry worsened throughout January 2009, particularly when Plaintiff complained that the process used to determine merit increases in salaries for members of his team discriminated against older

12

employees.

In February 2009, Plaintiff contacted the Indiana Department of Insurance to follow up on his complaint.  He discovered that Nationwide had requested additional time to respond to the complaint so that it could complete an internal investigation.  Plaintiff, fearing that the internal investigation would not be objective, then filed similar complaints with insurance regulatory bodies in Illinois and Michigan.  Later that month, Plaintiff was taken off the performance improvement plan.

Defendants Smith and Cotter met with Plaintiff on March 4, 2009. They told him that the Great Lakes Region was merging with the Ohio/West Virginia Region, and that Plaintiff's position was being eliminated.  Plaintiff avers that typically employees whose jobs were eliminated due to merger were allowed to re-post for remaining positions, but that he was not given such an opportunity.  On March 8, 2009, Plaintiff received his 2008 performance review, and received a DNM for the entire year.  Plaintiff claims that Curry did not use established criteria to evaluate him, but instead intentionally slanted the report to give Plaintiff a poor score.

Later in March, Plaintiff met with counsel for Defendant Nationwide in Battle Creek, Michigan, and in Carmel, Indiana, regarding the complaints

he had filed with the state regulatory agencies.  Plaintiff cooperated in the meetings, and was hopeful that Nationwide would address the alleged improprieties he had identified.  Plaintiff later sent letters to members of Nationwide's Board of Directors outlining his complaints.  However, in May 2009, Nationwide concluded its internal investigation of Plaintiff's complaints, and determined that they were without merit.

Plaintiff received the formal notice of job elimination on April 23, 2009, and was placed on unassigned status as of that date while he searched for a new job.  He applied for thirty-one positions internally, and was offered eight interviews.  Of the eight interviews, two were canceled after the respective hiring teams reviewed Plaintiff's 2008 performance evaluation. Plaintiff's other internal interviews were unsuccessful.  Plaintiff was officially terminated from Nationwide on June 21, 2009.  However, he quickly found a new job in Illinois, which he started on July 25, 2009.

Plaintiff then filed this suit in the Circuit Court of Sangamon County, Illinois.  The Defendants removed the case to this Court and filed the Motion now before the Court.

<u>LEGAL STANDARDS</u>

For purposes of a motion to dismiss, a federal court accepts as true all

well-pleaded factual allegations in the plaintiff's complaint.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996); Village of DePue v. Viacom Intern., Inc., 632 F.Supp.2d 854, 861 (C.D. Ill. 2009).  The court must also draw all inferences in favor of the plaintiff.  Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998); Village of DePue, 632 F.Supp.2d at 861.  The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

Federal Rule 12(b)(6) provides that dismissal is proper where a complaint fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although the plaintiff need not plead detailed, specific factual allegations, he must provide sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  The U.S. Court of Appeals for the Seventh Circuit has held that a claim is plausible on its face if the defendant has fair notice of what the claim is and the grounds upon which it rests.

<u>George v. Smith</u>, 507 F.3d 605, 608 (7th Cir. 2007).   When a court considers the complaint's allegations, it "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."   <u>Brooks v. Ross</u>, 578 F.3d 574, 581 (7th Cir. 2009).

A federal district court does not hold a complaint submitted by a pro se plaintiff to the same standards as a pleading prepared by a trained attorney.   <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam); <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1427 (7th Cir. 1996).   The court should liberally construe a pro se complaint to avoid dismissal on technical grounds.   <u>Henderson v. Sheahan</u>, 196 F.3d 839, 845-46 (7th Cir. 1999). Nonetheless, a pro se litigant can "plead himself out of court" if his factual allegations undercut the claims he makes in the complaint.   <u>Id.</u> at 846.

<u>INDEX OF DOCUMENTS</u>

As an initial matter, the Court addresses the Index Plaintiff has submitted to support his claims.   Plaintiff urges the Court to consider these documents in conjunction with evaluating Defendants' Motion.   Defendants argue that consideration of these materials is improper because their Motion is directed at the sufficiency of the Complaint on its face.

The purpose of a motion to dismiss is to evaluate the complaint's

adequacy, not to address the merits of the case.  <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990).  A federal district court's consideration of materials beyond the complaint converts the motion to dismiss into a motion for summary judgment.  <u>Fed. R. Civ. P.</u> 12(d).  A narrow exception exists for documents that are central to the plaintiff's claim.  <u>Tierney v. Vahle</u>, 304 F.3d 734, 738 (7th Cir. 2002).  This exception is not "intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment . . . ."  <u>Id.</u>

In this case, the Court declines Plaintiff's invitation to consider the documents contained in the Index.  These materials were not attached to the Complaint, and are not relevant to the issues Defendants raise in their Motion.  The Defendants' Motion attacks the Complaint on its face, and the Court sees no reason to look beyond the Complaint in deciding this matter.  Furthermore, given the fact that neither side in this dispute has had the benefit of discovery, it would be inappropriate to convert the Defendants' Motion into one for summary judgment.

Therefore, the Court will not consider the documents contained in Plaintiff's Index.  The Defendants' Objections are sustained.

<u>ORAL ARGUMENT</u>

As the briefs have adequately addressed the issues raised in Defendants' Motion, Plaintiff's Motion for Oral Argument is denied.

<u>ANALYSIS</u>

Defendants seek dismissal of certain of Plaintiff's claims for various reasons.  The Court will start by addressing the federal-law claims, and then move on to the state-law claims.

<u>FEDERAL CLAIMS</u>

I.  <u>UNIDENTIFIED "ADDITIONAL" CLAIMS</u>

Defendants argue that Plaintiff's allegations of violations of "additional common and/or constitutional law protections against retaliation and/or discrimination which exist in [Illinois, Indiana, Michigan, and the United States of America]" are insufficient to state claims.  <u>Complaint</u>, ¶ 2. Plaintiff argues that he is entitled to latitude because he is representing himself.

Even a liberal construction of Plaintiff's unidentified "additional" claims leads to the conclusion that they fail as a matter of law.  Plaintiff's allegations do not provide Defendants fair notice of the claims' substance or factual bases.  <u>See</u> <u>George</u>, 507 F.3d at 608.  Indeed, he does not even

identify the specific claims he seeks to bring.  While Rule 8 does not set a high bar for pleadings, Plaintiff cannot surmount it by merely including a catchall allegation in his Complaint.

Therefore, the Court dismisses the claims for violations of "additional common and/or constitutional law protections against retaliation and/or discrimination which exist in [Illinois, Indiana, Michigan, and the United States of America]."  See Complaint, ¶ 2.

II.   SOX CLAIMS

Defendant argues that the Court should dismiss Plaintiff's claims under SOX because Nationwide is not a publicly traded company, and because Plaintiff did not exhaust his administrative remedies.  Plaintiff disputes Defendants' first argument, but admits that he did not follow the administrative procedure set out in the Act.

Prior to bringing a SOX whistleblower claim in federal district court, the employee must file a complaint with the U.S. Department of Labor (DOL) within ninety days of the alleged discrimination.  18 U.S.C. § 1514A(b)(1)(A); 49 U.S.C. § 42121(b)(1).  The DOL has delegated its authority to receive and investigate whistleblower complaints to the Occupational Safety and Health Administration (OSHA).  Delegation of

Authority and Assignment of Responsibility to the Assistant Secretary for
Occupational Safety and Health, 67 Fed. Reg. 65008-01, 2002 WL
31358967 (Oct. 22, 2002); see 29 C.F.R. § 1980.103(c).  OSHA evaluates
the complaint to determine whether the complaining party has made a
prima facie case of discrimination based on protected activity.  29 C.F.R. §
1980.104(b).  Either party can appeal an adverse decision to the DOL's
Office of Administrative Law Judges.  29 C.F.R. § 1980.106.

A plaintiff may only file suit in federal district court if OSHA does not
resolve his claim within one-hundred eighty days, and if such delay is not
the result of the plaintiff's bad-faith conduct.  29 C.F.R. § 1980.114(a).  A
federal district court does not have jurisdiction over a SOX whistleblower
claim unless the plaintiff follows these administrative procedures.  Murray
v. TXU Corp., 279 F.Supp.2d 799, 802 (N.D. Tex. 2003).  When a federal
court does not have subject-matter jurisdiction over a claim, it must dismiss
that claim, for it is "fundamental that if a court is without jurisdiction of the
subject matter it is without power to adjudicate . . . ."  Stewart v. United
States, 199 F.2d 517, 519 (7th Cir. 1952); see Fed. R. Civ. P. 12(b)(1).

In this case, Plaintiff admits that he did not follow the administrative
procedure prescribed by the Act.  Therefore, the Court does not have

subject-matter jurisdiction over his SOX claims.  Plaintiff argues that he is entitled to equitable estoppel, citing Million v. Frank, 47 F.3d 385, 389 (10th Cir. 1995).  Million involved an employment discrimination claim under Title VII of the Civil Rights Act of 1964, and as such is inapposite. As the Million Court points out, "[c]ompliance with the filing requirements of Title VII is not a jurisdictional prerequisite" to bringing an employment discrimination lawsuit in federal district court.  Million, 47 F.3d at 389. However, the same is not true of a whistleblower claim under SOX, where following the administrative procedures prescribed by § 1514A is necessary to give a federal court jurisdiction over the claim.  See Curtis v. Century Surety Co., 320 Fed.Appx. 546, 548 (9th Cir. 2009); Murray, 279 F.Supp.2d at 802.

This Court does not have jurisdiction over Plaintiff's SOX claims, and accordingly dismisses them.

III.   SECTION 1983 CLAIMS

Defendants next assert that Plaintiff's claims under 42 U.S.C. § 1983 should be dismissed because Plaintiff has not alleged that the Defendants acted under color of state law.  Plaintiff counters in his Response that Defendants acted under color of state law, but provides no facts or law that

support his assertion.

To state a claim under § 1983, a plaintiff must allege that the defendant deprived him of his constitutional rights while acting "under color" of state law.  42 U.S.C. § 1983; <u>Fries v. Helsper</u>, 146 F.3d 452, 457 (7th Cir. 1998).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992).  To state a claim against a private actor under § 1983, a plaintiff must show that "the State is *responsible* for the specific conduct of which the plaintiff complains."  <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982); <u>Moore v. Jewel Food Stores, Inc.</u>, 1998 WL 102639, at * 5 (N.D. Ill. Mar. 3, 1998).  The mere fact that the state regulates an industry is insufficient to attribute that industry's actions to the state under § 1983.  <u>Blum</u>, 457 U.S. at 1004; <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 350 (1974).

Plaintiff's § 1983 claims fail as a matter of law.  He does not allege in the Complaint that the Defendants, collectively or individually, acted under color of state law, nor does he aver that the state is in some way responsible for his termination.  The Complaint establishes that the Defendants are

private actors who are not subject to liability under § 1983.  Plaintiff has not stated a claim for relief under § 1983, and accordingly the Court must dismiss his claims.

IV.   TITLE VII CLAIMS

Defendants next argue that the Court should dismiss Plaintiff's Title VII claims against the Individual Defendants and against Allied because Title VII arguably applies only to Nationwide, Plaintiff's former employer.

A.   Title VII Claims Against Individual Defendants

The Individual Defendants argue that they are not subject to liability under Title VII because they did not employ Plaintiff.

Title VII makes it illegal for an employer to discriminate against an employee on the basis of "race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2.  An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ."  42 U.S.C. § 2000e(b).  The U.S. Court of Appeals for the Seventh Circuit has held that, while this definition codifies traditional principles of respondeat superior liability, it does not impose individual liability on agents who act on the employer's behalf.  Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995); see Robinson v. Sappington,

23

351 F.3d 317, 322 n.9 (7th Cir. 2003) ("It is only the employee's employer who may be held liable under Title VII."); <u>Williams</u>, 72 F.3d at 555 ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer . . . ."); <u>see also</u> <u>Fairley v. Fermaint</u>, 482 F.3d 897, 903 (7th Cir. 2007).

Plaintiff alleges in the Complaint that he worked for Nationwide, and that Nationwide is an "employer" as defined by Title VII.  The Individual Defendants, on the other hand, were not Plaintiff's "employers," and thus are not subject to liability under Title VII.  Therefore, the Court dismisses the Title VII claims against the Individual Defendants.

B.    <u>Title VII Claim Against Allied</u>

Defendant Allied argues that it never employed Plaintiff, and that Plaintiff was instead employed by Nationwide.

As discussed above, Title VII protects an employee from being illegally discriminated against by his "employer," as defined by the statute.  While an affiliate of a Title VII employer may be subjected to liability for the employer's actions, such an affiliate "forfeits its limited liability only if it *acts* to forfeit it--as by failing to comply with statutory conditions of corporate status, or misleading creditors of its affiliate, or configuring the

24

corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right[s] of one of the affiliate's employees." Papa v. Katy Indus., Inc., 166 F.3d 937, 941 (7th Cir. 1999).

Plaintiff's Title VII claim against Allied must fail. Plaintiff does not allege in the Complaint that Allied was his employer, nor does he allege that Allied directed and forced Nationwide to violate Plaintiff's Title VII rights. See Papa, 166 F.3d at 941; see also Hoeffer v. U.S. Cellular Corp., 2007 WL 5541976, at *2 (W.D. Wis. Feb. 22, 2007) (holding that allegation that parent company controlled subsidiary's management and operations was insufficient to state an affiliate liability theory). His allegations of shared management personnel are insufficient to state a claim for affiliate liability under Title VII. Accordingly, the Court dismisses his Title VII claim against Allied.

V.    SECTION 1981 CLAIMS

Certain of the Individual Defendants and Defendant Allied argue that Plaintiff's § 1981 claims against them should be dismissed. The Court will first address the § 1981 claims against the Individual Defendants, and then address the § 1981 claim against Allied.

A.    Section 1981 Claims Against Individual Defendants

The Individual Defendants, with the exceptions of Defendants Curry, Reynolds, and Raybuck, argue that Plaintiff has failed to allege that they participated in acts of unlawful discrimination against him.

Section 1981 prohibits, among other things, a private employer from intentionally discriminating against its employees on the basis of race.  42 U.S.C. § 1981; see Musikiwamba v. ESSI, Inc., 760 F.2d 740, 748-49 (7th Cir. 1985); Waters v. Wisconsin Steel Works of Intern. Harvester Co., 427 F.2d 476 (7th Cir. 1970).  Individual liability under § 1981 is "premised upon personal participation in the alleged discrimination."  Daigre v. City of Harvey, 2009 WL 2371727, at *2 (N.D. Ill. July 30, 2009); see Musikiwamba, 760 F.2d at 753.  The plaintiff must allege that the individual defendant "directly engaged" in the complained-of discrimination.  See McGee v. Ill. Dept. of Transp., 2004 WL 726110, at * 2 (N.D. Ill. Apr. 1, 2004).

As Defendants point out, Plaintiff alleges only three specific acts of intentional racial discrimination against him, by Defendants Curry, Reynolds, and Raybuck.  See Complaint, ¶¶ 101, 145.  These allegations are sufficient to state a claim under § 1981 against these Defendants.  However,

Plaintiff's averments that the other Individual Defendants had knowledge or awareness of the alleged discrimination are insufficient to state claims for individual liability under § 1981.  See McGee, 2004 WL 726110, at * 3. While he alleges that Defendants Jurgensen, Rasmussen, Walker, and Schneider retaliated against him, Plaintiff does not identify a racial animus for these actions.  See Complaint, ¶¶ 149, 168.  Additionally, Plaintiff's allegations that Jurgensen, Rasmussen, Walker, Koken, Nalebuff, Finney, and Schneider "appear to have been fully aware of, and/or directly participated in the unlawful and/or improper racial discrimination in hiring and promotion" vis-a-vis the Talent Import Program do not state claims under § 1981 because he does not allege that he, specifically, was discriminated against in this context.  See Complaint ¶¶ 59, 148, 155, 167.

Plaintiff's § 1981 claims against Koken, Finney, Nalebuff, Jurgensen, Rasmussen, Walker, Smith, Cotter, Cadwallader, Schneider, Sitz, Garber, and Flowers fail as a matter of law, and the Court dismisses them.

B.    Section 1981 Claim Against Allied

Defendant Allied argues that Plaintiff's § 1981 claim against it should be dismissed because it never employed Plaintiff.  The Court agrees.  As discussed above in relation to Plaintiff's Title VII claim, the Complaint

contains no allegations that Allied employed Plaintiff.  Therefore, Plaintiff's § 1981 claim against Allied fails as a matter of law, and the Court dismisses it.

STATE CLAIMS

The Court now turns to Plaintiff's various state-law claims.

I.  CHOICE OF LAW

As a preliminary matter, the Court must determine which state's choice-of-law principles apply to this case.  In general, a federal district court applies the choice-of-law rules of the state in which it sits.  See Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V., 391 F.3d 871, 879 (7th Cir. 2004); Huthwaite, Inc. v. Randstad Gen. Partner (US), 2006 WL 3065470, at *2 (N.D. Ill. Oct. 24, 2006).  Accordingly, the Court uses Illinois' choice-of-law provisions to determine which substantive body of state law applies to Plaintiff's claims.

Illinois courts use the Restatement (Second) of Conflicts of Laws' "most significant relationship" test to determine which state's laws apply to a tort claim.  Esser v. McIntyre, 661 N.E.2d 1138, 1141 (Ill. 1996); see Fredrick, 144 F.3d at 503-04; Restatement (Second) Conflict of Laws § 145(1) (2009).  Under this test, "[t]he rights and liabilities of the parties

with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." Restatement (Second) of Conflict of Laws § 145(1). The court considers the place of injury, the place where the conduct giving rise to the injury occurred, the parties' places of domicile, and the place where the parties' relationship is centered. Esser, 661 N.E.2d at 1141. For purposes of this analysis, a party's place of domicile is the place of domicile at the time of the events alleged in the complaint. Id.; Miller v. Hayes, 600 N.E.2d 34, 37 (Ill.App. 1st Dist. 1992).

Under this analysis, it is clear that Indiana has the "most significant relationship" to Plaintiff's state-law tort claims. Plaintiff was a domiciliary of Indiana at the time that Nationwide terminated his employment. Plaintiff admits that his home-base was Carmel, Indiana. Although Plaintiff traveled to other states in the erstwhile Great Lakes Region, his relationship with Nationwide was centered in Indiana, where he interacted with his supervisor, Curry, and other Individual Defendants. Plaintiff filed his EEOC charge in the EEOC's Indianapolis office. These facts support the conclusion that Indiana law applies to Plaintiff's tort claims. The Court will apply Indiana law to Plaintiff's tort claims.

II.   TORT CLAIMS

Plaintiff brings tort claims for libel, slander, intentional and negligent interference with contractual relations, and retaliatory discharge. The Court analyzes each claim under Indiana law.

A.   Libel and Slander

Plaintiff alleges that certain Defendants' "apparent action[s] in communicating internally and/or externally, in writing and/or verbally, as to the Plaintiff's status, history, and/or competence constitute[d] actionable libel and/or slander." See, e.g., Complaint, ¶ 103. Plaintiff lodges this claim against Defendants Curry, Smith, Cadwallader, Cotter, Sitz, Garber, Schneider, and Flowers. These Defendants argue that the allegations are insufficient to state a claim for defamation under Indiana law, and do not satisfy Rule 8.

Claims for libel and slander fall under the umbrella tort of defamation. 53 C.J.S. Libel and Slander; Injurious Falsehood § 1 (West 2009). An action for slander involves a defamatory statement that was made orally, while an action for libel involves a written or printed defamatory statement. Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990). Under Indiana law, a plaintiff in a defamation case must allege that: (1) the defendant made a

30

communication with "defamatory imputation;" (2) the defendant acted with malice; (3) the defendant published the communication; and (4) the plaintiff suffered damages because of the defendant's conduct. <u>Hamilton v. Prewett</u>, 860 N.E.2d 1234, 1243 (Ind. App. 2007); <u>Dietz v. Finlay Fine Jewelry Corp.</u>, 754 N.E.2d 958, 968 (Ind. App. 2001).

To satisfy the pleading requirements of Rule 8, the plaintiff in a defamation case must "allege the substance of the words at issue, provided [the] allegation contains sufficient contextual detail to provide a defendant notice of the alleged statement underlying the defamation claim." <u>Earl v. H.D. Smith Wholesale Drug Co.</u>, 2009 WL 1871929, at *3 (C.D. Ill. June 23, 2009); <u>see</u> <u>Robinson v. Morgan Stanley</u>, 2007 WL 2815839, at *7 (N.D. Ill. Sept. 24, 2007).  However, the plaintiff need not recite the allegedly defamatory statement verbatim. <u>Robinson</u>, 2007 WL 2815839, at *7.

Plaintiff fails to state claims for libel and slander.  He has not alleged the substance of the supposedly defamatory statements made by the various Defendants.   Indeed, he only speculates that such communications occurred. <u>See</u>, <u>e.g.</u>, <u>Complaint</u> ¶ 103 (referencing "apparent action"). These conclusory, vague allegations fail to put Defendants on notice as to the

charges against them, and do not give rise to plausible claims for relief because the Court cannot reasonably infer that Defendants are liable for "the misconduct alleged," let alone identify what, specifically, the alleged misconduct was. See Ashcroft, 129 S.Ct. at 1949. Nor does Plaintiff specify to whom these allegedly defamatory communications were published. Therefore, the Court dismisses Plaintiff's libel and slander claims against Defendants Curry, Smith, Cadwallader, Cotter, Sitz, Garber, and Schneider.

As to Defendant Flowers, Plaintiff includes an additional allegation that "[g]iven the nature of technical and fiduciary competence as a pre-requisite skill to someone in Plaintiff's role (claim director), such statements rise to the level of defamation per se." Complaint, ¶ 185. "A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." Baker v. Tremco, Inc., 917 N.E.2d 650, 657 (Ind. 2009) (internal quotation marks and citation omitted); Kelley v. Tanoos, 865 N.E.2d 593, 596 (Ind. 2007). Statements that are defamatory per se are "'so obviously and naturally harmful that proof of their injurious character can be dispensed with.'" Baker, 917

32

N.E.2d at 658 (quoting <u>Levee v. Beeching</u>, 729 N.E.2d 215, 220 (Ind. App. 2000)).

Again, Plaintiff fails to identify or describe the statements that form the basis of his claim, nor does he provide contextual clues sufficient to put Defendant Flowers on notice as to what, exactly, Plaintiff is alleging. Insofar as Plaintiff is claiming that Flowers' audit of Plaintiff's team constituted defamation per se, he misses the mark. Flowers' conclusion that Plaintiff's team was performing below his employer's expectations does not translate into a statement that Plaintiff was engaged in professional misconduct. <u>See</u> <u>Baker</u>, 917 N.E.2d at 658 (finding defendant's statement that plaintiff had engaged in "inappropriate sales practices" not defamatory per se). Therefore, the Court dismisses Plaintiff's libel and slander claims against Defendant Flowers as well.

B.  <u>Intentional and Negligent Interference With Contractual Relations</u>

Plaintiff brings claims for intentional and negligent interference with contractual relations against Defendant Curry for "interference with Plaintiff's attempts to secure alternative employment, by way of separate legal entities under the Nationwide group of companies . . . ." <u>Complaint</u>,

¶ 103.

Plaintiff's claims that Defendant Curry's actions "constituted intentional and/or negligent interference with contractual relations" fail as a matter of law.  See Complaint, ¶ 103.  To bring a cause of action for either theory under Indiana law, a plaintiff must first allege the existence of a valid, enforceable contract.  Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1235 (Ind. 1994); see Williams v. Seniff, 342 F.3d 774, 792 (7th Cir. 2003).  Plaintiff's Complaint is devoid of any allegation that there was a valid, enforceable contract between him and any of the potential employers identified in his Complaint.  Insomuch as Plaintiff has attempted to lodge claims for intentional or negligent interference with contractual relations, the Court dismisses such claims.

However, viewing the facts in the light most favorable to Plaintiff, and broadly construing his pro se pleading, the Court notes that interference with a business relationship is a separate tort under Indiana law.  See Williams, 342 F.3d at 792 n.19; Biggs v. Marsh, 446 N.E.2d 977, 983 (Ind. App. 1983); see 27 Ind. Law Encycl. Torts § 30 (West 2009).  Plaintiff's allegation that Curry hindered his ability to secure alternative employment seems to invoke this tort.  Therefore, the Court will analyze whether

Plaintiff has stated a claim for interference with a prospective business relationship.

To state a claim for interference with a business relationship under Indiana law, a plaintiff must allege: "(1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship." Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp., 911 N.E.2d 85, 94 (Ind. App. 2009); AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc., 816 N.E.2d 40, 51 (Ind.App. 2004). The plaintiff must also allege that the defendant's conduct was illegal. Levee, 729 N.E.2d at 222; Biggs, 446 N.E.2d at 983. Defamation does not constitute illegal conduct for purposes of interference with a prospective business relationship. Levee, 729 N.E.2d at 222-23.

Even construing the Complaint liberally, Plaintiff has failed to state a claim for interference with a business relationship because he has not, and cannot, allege that he had a valid business relationship with Scottsdale Insurance Company, or with any of the Nationwide subsidiaries with whom

he interviewed.  Simply interviewing for a position does not establish a valid business relationship.  Further, Plaintiff does not claim that Curry's alleged conduct was illegal; Plaintiff's allegation that she defamed him is insufficient to satisfy the illegality requirement under Indiana law, as discussed above. Accordingly, the Court dismisses Plaintiff's claim for interference with a business relationship.

## C.    Retaliatory Discharge

Plaintiff claims that Defendants fired him in retaliation for the complaints he lodged with the EEOC and various state insurance regulatory bodies.[3]  The Court analyzes this claim under Indiana law.

Indiana is an at-will employment jurisdiction.  Montgomery v. Bd. of Trustees of Purdue Univ., 849 N.E.2d 1120, 1128 (Ind. 2006).  This means that an employer can fire an employee at any time for any reason, or for no reason at all.  Id.  However, in limited situations the Indiana courts have recognized a public policy exception to this rule.  Meyers v. Meyers, 861 N.E.2d 704, 706 (Ind. 2007); Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 717 (Ind. 1997).  To invoke the public policy exception to the

---

[3]The Charge of Discrimination Plaintiff filed with the EEOC alleges discrimination based on retaliation, race, and sex.

at-will employment rule, the plaintiff must allege that he was terminated "in contravention of a 'clear statutory expression of a right or duty.'"  Ryan v. Underwriters Labs., Inc., 2007 WL 2316474, at *8 (S.D. Ind. Aug. 8, 2007) (quoting Orr, 689 N.E.2d at 718)).   The plaintiff must identify the statutory source of the right he exercised or the duty he fulfilled.  Hostettler v. Pioneer Hi-Bred Intern., Inc., 624 F.Supp. 169, 172 (S.D. Ind. 1985).

Indiana courts have interpreted this exception narrowly, applying it only when an employee was fired for filing a worker's compensation claim, or when an employee was fired for "refusing to violate a legal obligation that carried penal consequences."  Meyers, 861 N.E.2d at 707; see McGarrity v. Berlin Metals, Inc., 774 N.E.2d 71, 78-79 (Ind.App. 2002) (allowing exception when employee was fired for refusing to file fraudulent tax return); Call v. Scott Brass, Inc., 553 N.E.2d 1225, 1230 (Ind.App. 1990) (allowing exception when employee was fired for refusing to disregard jury summons).  Indiana courts have refused to apply the exception to the at-will employment rule when, for example, a drug company employee was terminated for reporting his supervisors' alleged misconduct in putting together drug safety reports for the Food and Drug Administration.  Campbell v. Eli Lilly & Co., 413 N.E.2d 1054, 1061-62 (Ind.App. 1980);

see Hostettler, 624 F.Supp. at 170-71 (refusing to apply exception when employee was terminated for reporting supervisor misconduct).

In order for Plaintiff's common-law retaliatory discharge to survive, Plaintiff must invoke the exception to Indiana's at-will employment rule. He has not done so.  He does not mention the exception in the Complaint, nor does he allege that his termination contravened a specific statutory right or duty.  Instead, Plaintiff alleges that the Defendants' behavior constituted "a violation of . . . the common law prohibition under state and/or Federal law, including such prohibition in the States of Illinois, Indiana, and Michigan against discrimination, retaliation, or wrongful termination related thereto."[4] See, e.g., Complaint, ¶ 101.   Such allegations are "conclusory legal statements," and as such are insufficient to state a claim.  See Brooks, 578 F.3d at 581.   Accordingly, Plaintiff's common-law retaliatory discharge claims are dismissed.

III.   CONTRACT CLAIMS

Plaintiff alleges claims for breach of express and implied contract against Defendant Nationwide and Defendant Cadwallader.   These Defendants argue that Plaintiff's claims fail because he was an at-will

---

[4]As discussed above, Illinois and Michigan law do not apply to Plaintiff's claims.

employee.

To state a claim for breach of employment contract under Indiana law, a plaintiff must first allege that: (1) there was a contract between the plaintiff and defendant; (2) the defendant breached that contract; and (3) the plaintiff suffered damages because of the defendant's breach. McCalment v. Eli Lilly & Co., 860 N.E.2d 884, 894 (Ind.App. 2007). Indiana courts have refused to "construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks." Orr, 689 N.E.2d at 722; see Workman v. United Parcel Service, Inc., 234 F.3d 998, 1000 (7th Cir. 2000). The general rule is that Indiana is an at-will employment state and an employer can terminate an employee "at any time for any reason." Reeder-Baker v. Lincoln Nat'l Corp., 644 F.Supp. 983, 984 (N.D. Ind. 1986).

Plaintiff here alleges that:

Nationwide Mutual Insurance Company, by virtue of specific and stringent written practices as to anti-retaliation, performance management, and adverse employment action, have [sic] created an express or implied contract of employment with requirements and duties in excess of those present under the common law employment doctrines of Illinois, Indiana, or Michigan. By virtue of allowing conduct inconsistent with said contract(s) to be breached, they [sic] are [sic] additionally vicariously liable for the resulting damages that the plaintiff has

suffered in this regard.

Complaint, ¶ 164.  While what, precisely, Plaintiff is alleging is less than clear, he does not allege that he had an employment contract with Defendant Nationwide.  Plaintiff's breach of express contract claims therefore fail as a matter of law, and are accordingly dismissed.

The Court now turns to Plaintiff's breach of implied contract claim.  A contract implied in fact is a "class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words."  Nationwide Ins. Co. v. Heck, 873 N.E.2d 190, 196 n.1(Ind.App. 2007).  Such a contract "arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement."  Id.

Plaintiff seems to claim that his employee handbook constituted an implied employment contract with Defendant Nationwide.  His claims are fatally flawed because, as discussed above, the Indiana Supreme Court has refused to treat an employee handbook as an employment contract.  See Orr, 689 N.E.2d at 720.  Plaintiff alleges no other facts or circumstances that would give rise to an implied-in-fact contract.  Therefore, Plaintiff has failed to state claims for breach of implied employment contract, and the

Court dismisses these claims.

IV.   <u>STATUTORY CLAIMS</u>

Plaintiff alleges violations of Illinois, Indiana, and Michigan statutes in the Complaint.  Defendants argue that Plaintiff cannot state claims under the laws of Illinois and Michigan because he was an Indiana resident at the time of the events alleged in the Complaint, and the laws of those states do not have extra-territorial effect.

A state's body of law does not, on its own, have extra-territorial effect. <u>See</u> 21 C.J.S. <u>Courts</u> § 46 (West 2009).  However, principles of comity dictate that "a federal court of any district will enforce a cause of action arising under the law of any state . . . ." <u>James-Dickinson Farm Mortgage Co. v. Harry</u>, 273 U.S. 119 (1927).  This presupposes, of course, that the plaintiff actually has a cause of action under the laws of one or several states; it does not give a would-be plaintiff license to file suit willy-nilly under the laws of any state he deems advantageous.

Plaintiff's claims under the laws of Illinois and Michigan fail.  The Illinois Human Rights Act was designed to protect the rights of "individuals within Illinois."  775 ILCS 5/1-102(A).  Neither the fact that Plaintiff moved to Illinois after Nationwide terminated him, nor the fact that

Plaintiff occasionally traveled to Downers Grove, Illinois, during his employment with Nationwide is sufficient to invoke the protections of Illinois law.  The alleged discrimination Plaintiff suffered took place in Indiana, not Illinois.

Plaintiff also brings a claim under the Illinois Whistleblower Act, alleging that Defendants retaliated against him for raising concerns about the alleged financial reserves manipulation with Illinois' insurance regulatory body.  See 740 ILCS 175/3(a)(8).  However, Plaintiff has not complied with the statutory requirements for bringing suit under § 3 of the Act.  See 740 ILCS 175/4(b).  The Court accordingly dismisses Plaintiff's claims under Illinois' Whistleblower Act.

The claims Plaintiff brings under the Michigan Elliot-Larsen Civil Rights Act also fail.  This law was designed to protect the rights of Michigan employees within the State of Michigan.  See Mich. Comp. Laws Ann. § 37.2101 (containing Executive Order 1985-2 and establishing the Michigan Equal Employment and Business Opportunity Council).  As discussed above, Plaintiff lived and worked in Indiana, and there is no evidence that the Elliot-Larsen Act was designed to vindicate the rights of Indiana residents and employees.  Therefore, the Court dismisses Plaintiff's claims

42

under the Michigan Elliot-Larsen Civil Rights Act.

Finally, Plaintiff raises claims under the Indiana Civil Rights Law, which was designed to, among other things, provide equal employment opportunities to the citizens of Indiana.  Ind. Code § 22-9-1-2.  The statute creates the Indiana Civil Rights Commission (ICRC) to investigate and adjudicate discrimination claims.  Ind. Code §§ 22-9-1-4(a) & 22-9-1-6. While the Civil Rights Law "expressly authorizes civil suits by private litigants," it also "sets out procedural prerequisites to bringing suit . . . ." Montgomery, 849 N.E.2d at 1130; see Ind. Code §§ 22-9-1-16 & 22-9-1-17.  Typically, a plaintiff must file a complaint with the ICRC, which then conducts an investigation and determines whether there is probable cause to believe that the defendant illegally discriminated against the plaintiff. M.C. Welding and Machining Co., Inc. v. Kotwa, 845 N.E.2d 188, 192 n.3 (Ind.App. 2006).  Pursuant to a work-sharing agreement between the ICRC and the EEOC, a complaint filed with the EEOC constitutes a complaint filed with the ICRC.  Id.; 910 Ind. Admin. Code 1-2-4.

If the ICRC finds probable cause that discrimination occurred, the parties either proceed to an administrative hearing, or, if both parties agree in writing, the plaintiff can institute a civil suit in state court.  Ind. Code §

22-9-1-16; <u>see</u> Kathryn E. Olivier, Note, <u>The Effect of Indiana Code Section</u> <u>22-9-1-16 on Employee Civil Rights</u>, 42 Ind. L. Rev. 441, 447-48 (2009). "Thus, unless the complainant convinces the defendant to consent to litigation, the case proceeds through the administrative hearing process and is decided by an administrative law judge." Olivier, at 448; <u>see</u> Ind. Code §§ 22-9-1-16 & 22-9-1-17.

In this case, Plaintiff's claims under the Indiana Civil Rights Law must be dismissed. First, he has not alleged that he satisfied the administrative prerequisites to bringing suit in court under the Law. While Plaintiff's charge with the EEOC satisfies the ICRC's filing requirement by virtue of the work-sharing agreement, Plaintiff has not alleged that the ICRC issued a finding of probable cause on his complaint. Even assuming that the ICRC did find probable cause, Plaintiff's claims still fail because the Defendants have not agreed in writing to adjudicate them in court, as required under § 22-9-1-16. Accordingly, the Court dismisses Plaintiff's claims under the Indiana Civil Rights Law against all Defendants.

<u>CONCLUSION</u>

THEREFORE, Defendants' Opposition and Objections to Plaintiff's Index of Documents (d/e 19) are SUSTAINED. Plaintiff's Request for Oral

Arguments as to Defendants' Motion to Dismiss Plaintiff's Complaint, In Part (d/e 15) is DENIED.  Defendants' Motion to Dismiss, In Part, Plaintiff's Complaint (d/e 9) is GRANTED.  The claims that survive are Title VII claims for retaliation, race discrimination, and sex discrimination against Defendant Nationwide, and § 1981 claims against Defendants Nationwide, Curry, Reynolds, and Raybuck.  Defendants Allied Mutual Insurance Company, M. Diane Koken, Fred C. Finney, Barry J. Nalebuff, William G. "Jerry" Jurgensen, Stephen Rasmussen, Kirt Walker, Eric E. Smith, Timothy Cotter, Natalie Cadwallader, Vicki Schneider, David Sitz, Joseph Garber, and Raymond Flowers are hereby dismissed from this action.

IT IS THEREFORE SO ORDERED.

ENTER:   April 8, 2010

      FOR THE COURT:

s/ Jeanne E. Scott

JEANNE E. SCOTT

UNITED STATES DISTRICT JUDGE
